**BLINDER, ROBINSON & CO., INC.,**
**Plaintiff Below, Appellant,**

v.

**Donald L. BRUTON, Securities Commissioner of the State of Delaware,**
**Defendant Below, Appellee.**

Supreme Court of Delaware.

Submitted: Sept. 27, 1988.
Decided: Jan. 9, 1989.

Samuel A. Nolen (argued), William W. Bowser, Esquire, and Robert W. Whetzel, Richards, Layton & Finger, Wilmington, for appellant.

Gregg E. Wilson (argued) and Richard W. Hubbard, Deputy Attys. Gen., Dept. of Justice, Wilmington, for appellee.

Joseph C. Long, Sp. Counsel, North American Securities Administrators Ass'n, Norman, Okl., for amicus curiae North American Securities Administrators Ass'n.

Before CHRISTIE, C.J., and HORSEY and WALSH, JJ.

WALSH, Justice:

This is an appeal from a Court of Chancery decision which upheld an order of the Securities Commissioner of Delaware ("Commissioner") which imposed sanctions upon the appellant, Blinder, Robinson & Co., Inc., ("Blinder") under the provisions of the Delaware Securities Act, 6 *Del.C.* §§ 7301–28 ("Act"). The Chancellor sustained the Commissioner's determination that Blinder had reported in a materially misleading manner the result of a disciplinary proceeding in another state. Although the Commissioner had originally imposed a two year suspension of Blinder's broker-dealer registration based on five statutory violations, the Chancellor affirmed only one of the violations while upholding the two year suspension. Although we agree with the Court of Chancery that the Commissioner had adequate ground to impose sanctions on Blinder, we reverse the Chancellor's affirmance of the penalty and remand the matter for further consideration of that issue.

I

The administrative phase of the proceedings against Blinder began with the issuance, by the Commissioner, of an order dated January 23, 1987, initiating "an adjudicatory proceeding" under section 7316 of the Act.[1] The Commissioner's order recited a history of disciplinary proceedings against Blinder in several states and before the Securities and Exchange Commission ("SEC"). Since certain of these proceedings had occurred within the previous year and allegedly had resulted in the suspension or denial of Blinder's broker-dealer registration, the Commissioner invoked the one-year reciprocal violation provision of section 7316(a)(6). In response to the initiating order Blinder requested a hearing before the Commissioner. In February and March, 1987, the Commissioner conducted a series of evidentiary hearings at which evidence in support of the charges was

---

1. 6 *Del.C.* § 7316. Section 7316 provides in pertinent part:

(a) The Commissioner may by order deny, suspend, or revoke any registration if he finds that the order is in the public interest and that the applicant or registrant or, in the case of a broker-dealer or investment adviser, ...or any person directly or indirectly controlling the broker-dealer or investment adviser:

(1) Has filed an application for registration which as of its effective date, ... was incomplete in any material respect or contained any statement which was, in light of the circumstances under which it was made, false or misleading with respect to any material fact; or

... (4) Is permanently or temporarily enjoined by any court of competent jurisdiction from engaging in or continuing any conduct or practice involving any aspect of the securities business; or

... (6) Is the subject of an order entered within the past 5 years by the securities administrator of any other state or by the Securities and Exchange Commission denying or revoking registration as a broker-dealer, ... or is suspended or expelled from a national securities exchange or national securities association ... the effect of which action has not been stayed by appeal or otherwise, ... but (i) the Commissioner may not institute a revocation or suspension proceeding under subsection (a)(6) more than one year from the date of the order or action relied on, and (ii) he may not enter an order under subsection (a)(6) on the basis of an order under another state act unless that order was based on facts which would currently constitute a ground for an order under this section;....

... The Commissioner may not institute a suspension or revocation proceeding on the basis of fact or transaction known to him when registration became effective unless the proceeding is instituted within the next 30 days. *Id.*

presented by a Deputy Attorney General on behalf of the State.

Although evidence presented by the State included claims that Blinder had engaged in questionable sales tactics at its Delaware office, the thrust of the State's presentation involved disciplinary proceedings commenced against Blinder in other jurisdictions. In a post-hearing submission, however, the State acknowledged that only two of the disciplinary orders, a consent decree issued on August 7, 1985, by a Wisconsin Circuit Court and a December 19, 1986, suspension order of the SEC, could arguably be a basis for Delaware discipline. Moreover, the State conceded that neither order should be deemed a "triggering" violation for the imposition of sanctions because Blinder had subsequently achieved registration in Wisconsin and the SEC order had been stayed pending judicial review.

On May 19, 1987, the Commissioner issued a written order suspending Blinder's registration for a period of two years. In his order, which contained findings of fact and conclusions of law, the Commissioner rejected the State's concession that the evidence did not present a triggering incident upon which Blinder's registration could be suspended, "in the public interest". The Commissioner found statutory triggers in five disciplinary actions: two court injunctions in Colorado,[2] an administrative ruling denying registration in Nebraska, and the Wisconsin and SEC proceedings, the actionability of which the State had disavowed. Moreover, the Commissioner concluded that Blinder had failed to report, or had improperly reported, the Colorado and Wisconsin proceedings. While acknowledging that Blinder had not been originally charged with misleading disclosures under section 7316(a)(1), the Commissioner noted that these allegations had been addressed by the parties during the evidentiary hearings and were thus proper subjects for administrative action. In view of Blinder's

"long history of disciplinary problems," it was concluded that a two year suspension was required to protect the public interest.

Blinder sought immediate judicial review in the Court of Chancery contending, essentially, that, as a matter of law, the Commissioner was without authority to impose sanctions based on the evidence presented. The Chancellor, in passing on Blinder's request for a preliminary injunction, found it reasonably probable that Blinder would succeed in demonstrating that the Commissioner's decision lacked statutory authority. In effect, the Chancellor concluded that none of the five disciplinary proceedings could form a statutory basis for sanctions because they were either stale (the Colorado and Wisconsin orders) or not final (the Nebraska and SEC orders). As a result the Chancellor stayed the effectiveness of the suspension order, pending a final ruling on Blinder's request for injunctive relief. *Blinder, Robinson & Co. v. Bruton*, Del. Ch., C.A. No. 9096, Allen, C. (July 17, 1987) [1987 WL 14750].

In a later ruling, the Chancellor focused on only one of the five statutory triggers and concluded that the Commissioner's disciplinary action was sustainable as to the reporting of the Wisconsin injunction.[3] The Chancellor determined that Blinder's failure to provide the Commissioner with sufficient information concerning the disciplinary action on its Broker–Dealer ("B/D") filings constituted a statutory trigger under section 7316(a)(4) notwithstanding the equivocal position of the State. The Chancellor affirmed the two year suspension, finding the administrative procedure under which the violation was adjudicated "fundamentally fair". *Blinder, Robinson & Co. v. Bruton*, Del. Ch., C.A. No. 9096, Allen, C. (March 31, 1988) [1988 WL 32375]. Blinder appeals from this ruling.

## II

In seeking reversal of the Court of Chancery's affirmance of the suspension order,

2. The Colorado injunctions arose in companion actions against Blinder and its controlling person, Meyer Blinder.

3. The Commissioner apparently did not pursue the other four violations at the permanent injunction level before the Chancellor, nor has the Commissioner argued their merit through a cross appeal in this Court.

Blinder contends that the Wisconsin order could not form the basis for sanctions because it was not misleading and, in any event, the deficiency was not relied upon by the Commissioner as a statutory predicate for discipline. Blinder also claims that the administrative proceedings lacked due process and that the Commissioner's refusal to accept the State's concession was arbitrary. Finally, Blinder attacks the Chancellor's acceptance of the two year suspension imposed by the Commissioner despite the affirmance of only one substantive violation.

### A.

Before addressing the merits of Blinder's contentions, we consider the standard of review of decisions by the Commissioner. Because of the area subject to regulation and the need for injunctive relief in enforcement, the Act designates the Court of Chancery as the forum for judicial review. 6 *Del.C.* § 7324(a).[4] The statutory standard which renders conclusive the Commissioner's findings of fact "if supported by competent, material and substantial evidence" is not unlike the traditional test for review of factual findings of administrative agencies. *See Searles v. Darling*, Del. Supr., 83 A.2d 96, 99 (1951). While 6 *Del. C.* § 7324 confers upon the reviewing Court the authority to permit either party to "adduce additional material evidence" before the Commissioner to supplement the record, no such request was made in this case and the parties are apparently content to rely upon the record before the Commissioner. The statute by its silence implicitly

recognizes the authority of the reviewing court to determine questions of law *de novo*. *See duPont v. duPont*, Del.Supr., 216 A.2d 674, 680 (1966). In turn, this Court in the exercise of its appellate review of the administrative ruling will apply a parallel standard—deferring to findings of fact supported by substantial evidence and examining conclusions of law *de novo*.

### B.

Blinder received its initial approval from Delaware for registration as a broker-dealer in 1982. Broker-dealers are required to renew their registration annually on application forms adopted by the Commissioner in order "to keep current the information contained in the application for initial registration." 6 *Del.C.* § 7314(a)(2). Part of the information required to be disclosed in the initial and subsequent annual registration filings is "any injunction or administrative order or conviction of a misdemeanor involving a security or any aspect of the securities business...." 6 *Del.C.* § 7314(a)(1).

On August 7, 1985, the Circuit Court of Dane County, Wisconsin, entered a permanent injunction which enjoined Blinder from continuing to violate Wisconsin's securities laws. Blinder noted this injunction in its September 25, 1985, B/D filing by characterizing it as an "Order" "State of Wisconsin" with the following description: "Blue Sky violation. Settlement has been reached, and recission [sic] is being made." On January 22, 1986, Blinder filed a B/D Amendment which described the Wisconsin

---

**4.** 6 *Del.C.* § 7324(a) provides:

(a) Any person aggrieved by a stop order, or an order under § 7316 of this title of the Commissioner may obtain a review of the order in the Court of Chancery by filing in court, within 60 days after the entry of the order, a written complaint praying that the order be modified or set aside in whole or in part. A copy of the complaint shall be forthwith served upon the Commissioner and thereupon the Commissioner shall certify and file within 20 days in court a copy of the filing and evidence upon which the order was entered. When these have been filed, the Court has exclusive jurisdiction to affirm, modify, enforce, or set aside the order, in whole or in

part. The findings of the Commissioner as to the facts, if supported by competent, material and substantial evidence, are conclusive. If within 20 days of the filing by the Commissioner, as provided above, either party applies to the Court for leave to adduce additional material evidence, and shows to the satisfaction of the Court that there were reasonable grounds for failure to adduce the evidence in the hearing before the Commissioner, the Court may order the additional evidence to be taken before the Commissioner and to be adduced upon the hearing in such manner and upon such conditions as the Court considers proper.

proceedings with substantially the same language.

■ The written instructions which govern the completion and filing of the B/D Amendments require the registrant to designate the "name and location of court" with respect to any "action" involving a broker dealer. The Commissioner found Blinder's reporting of the Wisconsin injunction misleading and the Court of Chancery agreed. As the Chancellor noted, the general designation "State of Wisconsin" conveys the impression that the order was issued by an administrative agency rather than a court. Apart from the requirement instructing that court orders be so identified, there clearly is a difference in the seriousness of an order emanating from a regulatory agency and an injunction issued by a court. The Act recognizes this difference because a stay of an injunction does not prevent the Commissioner from pursuing administrative action, while a stay of an administrative order precludes disciplinary action under section 7316(a). *Compare* 6 *Del.C.* § 7316(a)(4) *with* 6 *Del.C.* § 7316(a)(6). Moreover, the failure of Blinder to identify the issuing court essentially precluded the Commissioner from seeking additional information from the issuing authority. We thus agree that the reporting of the Wisconsin proceeding was not only misleading, but materially so, in view of the distinction between orders and injunctions embraced in sections 7316(a)(4) and (a)(6).

### C.

Blinder argues that even if its reporting of the Wisconsin injunction was deficient under section 7316(a)(1), as the Commissioner found, it was error for the Court of Chancery to view the misleading filing as substantial evidence to support a violation of section 7316(a)(4). In short, Blinder contends that the Chancellor erroneously sustained the discipline on a different legal basis from that found by the Commissioner.

■ It is true that the Chancellor upheld the sanctions under a section 7316(a)(4) "trigger", but he did so by treating the date of Blinder's correction of the reporting of the Wisconsin injunction, April 21, 1986, as the date of the Commissioner's "knowledge" of the Wisconsin injunction within the meaning of section 7316(a).[5] Although the Chancellor did not expressly find a violation of section 7316(a)(1) because of misleading reporting, such a finding is necessarily subsumed in his holding that the section 7316(a)(4) violation was not stale, because Blinder's misleading filings, in violation of section 7316(a)(1), had prevented the Commissioner from knowing of the existence of the Wisconsin injunction for purposes of section 7316(a). Because of the interrelation of the two violations we conclude that there is no inconsistency between the Commissioner's findings and the Chancellor's analysis in affirmance.

■ Blinder asserts that even if the disclosure was technically incorrect the Commissioner was not misled because there is no evidence that the deficient reporting by Blinder caused the Commission staff to refrain from any action it was otherwise inclined to pursue. This "causation" argument overlooks the fundamental purpose of the Act's disclosure requirements. The protection of the public from abuses in securities transactions, through the regulation of those engaged in the dealing of securities, requires full and accurate disclosure on the part of those entities seeking state registration. The disciplinary history of such registrants is clearly pertinent to the Commissioner's evaluation of whether the registrant is entitled to the privilege of securities dealing in Delaware. The failure to comply with the Act's reporting requirement is a statutory violation, *per se,* apart from its adverse effect on further administrative investigation. Blinder's misleading reporting deprived the Commissioner of in-

---

**5.** 6 *Del.C.* § 7316(a). The last paragraph of 7316(a) provides in pertinent part: "The Commissioner may not institute a suspension or revocation proceeding on the basis of fact or transaction known to him when registration be-

came effective unless the proceeding is instituted within the next 30 days." *Id.* Blinder's January, 1986, annual registration containing misleading information precluded application of the 30 day period.

formation he was entitled to receive. Given the fundamental purpose of the Act's disclosure standards no further showing of "causation" is required.

### III

Blinder next advances a due process claim, contending that the Commissioner impermissibly commingled the roles of prosecutor and adjudicator. As a result of this commingling, Blinder contends that it was denied a fair hearing before an impartial tribunal. Specifically, it argues that the Commissioner assumed the role of investigator and prosecutor to the detriment of his duty to render an impartial decision based on the evidence presented because he disregarded the State's "no trigger" concession and found a statutory "trigger" which was not initially charged.

Implicit in Blinder's due process claim is the assertion that the Act suffers from structural unfairness, *i.e.*, it permits the Attorney General to administer the Act through a designated Deputy, responsible for investigating and prosecuting violations of the Act, while that same Deputy may simultaneously discharge the Commissioner's adjudicative responsibilities.[6] In the administration of the Act, the Commissioner discharges certain duties which are distinct from his adjudicatory responsibilities and, it is argued, are clearly incompatible with the requirement of impartiality. In this case, the Commissioner, as authorized by statute, initiated the charges, received testimony from his employee-investigator and relied, in part, on his own records in finding a reporting violation.

It has long been recognized that the commingling of roles is often implicit in the practical functioning of administrative agencies which perform both investigative and fact finding functions. *See* 3 K. Davis, *Administrative Law Treatise* § 19.4, at 382–89 (1980). It is not unusual for an administrative agency to act as "litigant, lawyer and judge in the initial determination of the matter before it [and to appear] before the reviewing court ... in support of its own decision...." *Application of Wilmington Suburban Water Corp.*, Del. Supr., 211 A.2d 602, 605 (1965). This necessary mixing of functions is ameliorated by judicial review which affords careful scrutiny of the administrative agencies' evidential findings and "reasoning". *Id.* Although this power of review does not appear to be at variance with the statutory standard which governs appeals from the Commissioner's orders under 6 *Del.C.* § 7324(a), a necessary element of any judicial review is that claims of unfairness in the administrative process be seriously addressed. The Chancellor carefully considered this claim and concluded that it lacked factual or legal support. We agree.

The due process protection of the Delaware Constitution is considered to be coextensive with the due process protection of the United States Constitution. *See* Del. Const. art. I, § 7 (1897); *General Electric Co. v. Klein*, Del.Supr., 106 A.2d 206, 210 (1954). ("[In] civil cases, the phrase 'law of the land' has been held by our courts to have the same meaning as the phrase 'due process of law' in the federal constitution.... [I]n deciding a case of due process under our Constitution we should ordinarily submit our judgment to that of the highest court of the land, if the point at issue has been decided by that Court." (citations omitted)).

The seminal case on the commingling of investigative and adjudicative functions in an administrative setting is *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed. 2d 712 (1975). In *Withrow*, a physician's license to practice medicine was to be revoked by a state examining board, because of professional misconduct. The physician complained that his due process rights had

---

6. *See* 6 *Del.C.* § 7325(a). Section 7325(a) provides:

(a) This chapter shall be administered by the Attorney General who may designate a Deputy Attorney General to act as Securities Commissioner to be the principal executive officer of a Division of Securities of the Department of Justice to act for him administering this chapter. The Securities Commissioner shall have the qualifications of and his salary shall be fixed as that of a Deputy Attorney General.

*Id.*

been violated, because the board had investigated and would eventually decide his case at the board's own contested hearing. *Id* at 38–42, 95 S.Ct. at 1460–1461.

In validating the hearing, the Court noted that due process requirements of a fair trial before an unbiased tribunal applied to adjudication by administrative agencies as well as to courts. *Id.* at 46, 95 S.Ct. at 1463. The Court identified situations where experience teaches that there is too high a probability of bias on the part of a decision-maker to be constitutionally acceptable. That risk exists where the adjudicator "has a pecuniary interest in the outcome" and in cases "in which [the adjudicator] has been the target of personal abuse or criticism from the party before him." *Id.* at 47, 95 S.Ct. at 1464. (citations omitted). The Court commented:

> The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must *overcome a presumption of honesty and integrity* in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

*Id.* (emphasis supplied). The Court went on to note that "the growth, variety, and complexity of the administrative processes have made any one solution [to the problem of what process is due], highly unlikely." *Id.* at 51, 95 S.Ct. at 1466. In the context of lawyer discipline, this Court has held that the commingling of investigative and judicial functions at the administrative or fact finding level does not violate due pro-

cess. *See In re Kennedy*, Del.Supr., 472 A.2d 1317, *cert. denied*, 467 U.S. 1205, 104 S.Ct. 2388, 81 L.Ed.2d 346 (1984).

Blinder attempts to distinguish *Withrow* by asserting that *Withrow* applies only when investigative and adjudicative functions are commingled and not when cases present a mix of prosecutorial and adjudicative functions. Blinder reads *Withrow* too narrowly and distinguishes *Withrow* on a ground not present in this record.[7]

■ While it is possible under the Delaware Securities Act for the Commissioner to both prosecute and adjudicate a case before him, that is not the present situation. In the proceedings before the Commissioner the evidence against Blinder was presented by a Deputy Attorney General, and while that individual was a coemployee of the Commissioner, in the Department of Justice, there is no claim of collusion or unauthorized communication. The mere prosecution of a case by one Deputy Attorney General before another Deputy Attorney General, acting in an adjudicative capacity, is not sufficient to overcome the strong presumption set forth in *Withrow*, in the absence of specific evidence of bias. There is no indication that the Commissioner did more than discharge his duty to enforce the Act.

In support of its claim that the Commissioner assumed a prosecutorial role inconsistent with his adjudicative duty, Blinder points to the Commissioner's refusal to be bound by the State's concession of the absence of a statutory "trigger" for the imposition of sanctions. The Chancellor ruled that the State's communication was too equivocal to constitute a judicial admission, because it disavowed the presence of a statutory "trigger" while at the same time acknowledged a legal basis for suspension. We view the State's communication as a statement of its legal position rather than a stipulation of fact.

---

7. Blinder also relies upon a decision of the Pennsylvania Supreme Court which held that the decision to initiate a disciplinary proceeding, standing alone, is sufficient to preclude an administrative officer from acting in an adjudicative capacity in the same proceeding. *See*

*Dussia v. Barger*, 466 Pa. 152, 351 A.2d 667 (1975). We find such a *per se* rule inconsistent with the particularized standard of *Withrow*, and our holding in *Kennedy*, and decline to follow it.

Judicial admissions which are binding on the tendering party are limited to factual matters in issue and not to statements of legal theories or conceptions. *See New Amsterdam Casualty Co. v. Waller*, 4th Cir., 323 F.2d 20, 24 (1963), *cert. denied*, 376 U.S. 963, 84 S.Ct. 1124, 11 L.Ed. 2d 981 (1964). "When counsel speaks of legal principles ... he makes no judicial admission ... which would prevent the court from applying to the facts disclosed by the proof, the proper legal principles as the Court [sic] understands them." *Id.* Aside from its ambiguity, the post hearing statement of the Deputy Attorney General focused on the legal effect of the August 7, 1985, Wisconsin injunction. In noting that Blinder had subsequently been registered to do business in Wisconsin, the State suggested that in the exercise of "restraint" Delaware should not impose a reciprocal penalty for what Wisconsin had forgiven. Rather than a concession of fact, the State's position was a request to exercise discretion against the imposition of sanctions. It clearly did not bind the Commissioner to the suggested result and his action to the contrary does not reflect a prosecutorial disposition.

## IV

A finding by the Commissioner that a statutory violation exists, authorizes the Commissioner to "deny, suspend or revoke" any registration if such action "is in the public interest". 6 *Del.C.* § 7316(a). Blinder argues that even if a reporting violation under section 7316(a) is sustainable, the Commissioner made no specific determination that such a violation posed actual or threatened harm to Delaware or its citizens. We agree with the Chancellor that the Commissioner was entitled to protect the public interest on the basis of Blinder's reporting deficiency. There need be no direct discernible relationship between the statutory violation and Blinder's current business practices in this State since, as noted above, a broker-dealer's disciplinary history in other jurisdictions is clearly pertinent to a request for authority to transact in securities in Delaware. In our view, however, it was error for the Chancellor to affirm a two year suspension, which was predicated by the Commissioner on five specific violations, while sustaining only one substantive violation.

The Commissioner attempts to preclude review of Blinder's penalty because the question was not raised by Blinder in the Court of Chancery and therefore may not be considered on appeal. *See* Supreme Court Rule 8. The Commissioner concedes, however, that the question of whether there should be a remand for redetermination of the penalty was discussed at oral argument before the Chancellor. In any event, given the importance of this issue and the somewhat convoluted manner in which the Commissioner's action was ultimately affirmed, we believe "the interests of justice" require consideration of this issue by this Court under Supreme Court Rule 8.

Although the Chancellor did not specifically consider the justification for the imposition of a two year suspension for the single statutory violation which survived judicial review, he did advert to the Commissioner's characterization of Blinder as a scofflaw [8] of state security regulations. The Commissioner argues that only a single statutory trigger is required to invoke the Commissioner's suspension authority and the administrative penalty was not excessive in light of Blinder's disciplinary record.

It is true that a single violation of any one of the substantive triggers contained in section 7316(a) authorizes the Commission-

---

**8.** The Commissioner's description of Blinder as a "scofflaw of securities regulations" was borrowed, with attribution, from a ruling of an administrative law judge in an SEC proceeding. In common understanding the term "scofflaw" refers to a "contemptuous lawbreaker." *Webster's International Dictionary* 2034 (3d ed. 1971). The reference is to Blinder's disciplinary history in other states since the present proceeding is, apparently, its first brush with Delaware's securities law. Although the Commissioner was entitled to note Blinder's "record", the facts underlying Blinder's record were not presented. The use of such evidence is limited to the penalty phase of the disciplinary proceeding.

er to impose sanctions upon a broker-dealer. Those sanctions—denial, suspension or revocation of registration—bespeak a gradation of penalties. The Commissioner has discretion to impose any penalty deemed necessary to protect the public interest and further the Act's prophylactic purpose. Given the evolution of the charges in this case, it presumes too much to conclude that a single charge of misleading reporting, which was not part of the initiating charges, justifies the same penalty as the five violations determined by the Commissioner. Moreover, the Commissioner found no basis in Blinder's Delaware activity, vis-a-vis its clientele, for the imposition of sanctions.

Blinder argues that, on a comparative basis, its disciplinary record nationwide is no worse than other Delaware registrants and that it has achieved registration or a stay of proceedings in all jurisdictions, including Wisconsin, which were the subject of the Commissioner's review. Thus, it is argued, the selection by the Commissioner of a two year period bears no relationship to the severity of the violation. In the absence of evidence of what sanctions have been imposed on other violators under the Act we are not in a position to pass upon Blinder's comparative punishment argument. The Act's suspension authority is open ended and presumably the Commissioner may suspend a broker-dealer for any period of time. We are concerned, however, that there is no explanation in this record as to why two years, (as opposed to some lesser period) was selected, other than Blinder's out of state disciplinary record.

In *Mayflower Sec. Co. v. Bureau of Securities*, 64 N.J. 85, 312 A.2d 497, 499 (1973), the New Jersey Supreme Court, in construing the penalty provision of the New Jersey Securities Act, which like Delaware's Act, is modeled after the Uniform Securities Act, *Id.*, 312 A.2d at 498–99, noted that the form of sanction authorized under the Act is imposed by the administrative authority "in the reasonable exercise of his discretion depending on the nature and circumstances of the violation and the offender." *Id.* at 499. In directing the

New Jersey Bureau of Securities to reconsider a twenty day suspension for a non-willful record keeping violation, the Court noted that severe sanctions are designed for use in "serious situations":

> The "public interest" requirement seems to imply a conclusion that revocation or suspension of registration is felt necessary to protect present and future customers of the registrant, *i.e.*, the investing public—for example, revocation, if the registrant is shown to be unfit to continue to engage in the securities business, or suspension from business for a period, to impress upon him the necessity for drastically mending his ways lest he reach the level of unfitness. It is worthy of mention that the Commissioners' Note to the Uniform Act, in commenting upon this requirement, says: "But the requirement that such a finding be made in all cases emphasizes that not every minor or technical infraction is meant to result in a denial, suspension or revocation order."

*Id.* at 500 (citations omitted).

■ Although we do not share Blinder's view that its misleading reporting of the Wisconsin injunction was a mere technical deficiency, when viewed against the five substantive violations found by the Commissioner, four of which were rejected by the Chancellor, the appropriateness of a two year suspension is a matter for separate judicial consideration. The Court of Chancery is accorded broad power of review and may modify the Commissioner's order "in whole or in part", 6 *Del.C.* § 7324(a), and we view that authority as encompassing the power to modify any administrative sanction which is deemed disproportionate to the underlying conduct. Accordingly, this matter is remanded to the Court of Chancery for a determination of the appropriateness of the two year suspension in the light of the single sustainable violation of the Act and the protection of the public interest required thereby.

In sum, we affirm the Chancellor's determination that Blinder's misleading reporting of the Wisconsin injunction is a statutory basis for the imposition of administrative discipline under the Act. We reverse

the approval of the two year suspension and remand for further proceedings consistent with this opinion.