# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CFT AMBULANCE SERVICE, | : | |
| A DELAWARE CORPORATION, | : | |
| | : | |
| Appellant, | : | C.A. No. K16A-02-005 JJC |
| | : | |
| v. | : | |
| | : | |
| STATE FIRE PREVENTION | : | |
| COMMISSION, | : | |
| | : | |
| Appellee. | : | |

## OPINION and ORDER

Submitted: July 28, 2016
Decided: October 24, 2016

Kester I.H. Crosse, Esquire, WILLIAMS & CROSSE, Wilmington, Delaware, *Attorney for Appellant.*

Olivia Patricia Davis, Esquire, DEPARTMENT OF JUSTICE, Wilmington, Delaware, *Attorney for the Appellee*.

Clark, J.

# I. Introduction

This appeal arises from the State Fire Prevention Commission's (hereinafter "Commission's") decision to decertify Appellant CFT Ambulance Service (hereinafter "CFT"). After a hearing where CFT failed to appear, the Commission found that CFT had numerous and ongoing violations of the Commission's regulations. As a result of these serious violations, the Commission decertified CFT as a licensed non-emergency ambulance provider in the State of Delaware. CFT appeals the Commission's decision to decertify the company. After a review of the record and the parties' submissions, the Court **AFFIRMS** the decision of the Commission.

# II. Procedural and Factual Background

Since this matter involves an appeal of an administrative agency's decision, the Court is confined to a review of the facts contained in the record, and it is those facts that are referenced herein. CFT has been a Delaware licensed non-emergency ambulance service provider since 2009. This status requires the company to comply with the Commission's regulations regarding ambulance maintenance and equipment requirements.

Beginning in 2009, CFT failed to comply with those requirements. In December 2009, the Commission cited CFT twice for its ambulances having equipment that was not in reasonable and working condition. The violations continued as the Commission again cited CFT in March 2010 after inspecting five of the company's ambulances. The Commission found these units' equipment to be deficient and to be missing several critical items. In October 2010, the Commission conducted another inspection of CFT's ambulances and found leaking smoke from an exhaust pipe affecting the interior of one of its units.

The violations continued into 2011 and 2012. In April 2011, the Commission conducted an inspection and found one ambulance missing a side mirror on the driver's side door and lacking oxygen in the main oxygen tank. In May 2011, another CFT unit had to be placed out-of-service for missing equipment and other safety violations. When the Commission next inspected CFT in August 2012, it placed two of the company's ambulances out of service for a malfunctioning air conditioning in one and an overheating engine in the other.

In June 2013, the Commission placed two more units out-of-service, and in January 2014, another ambulance was placed out-of-service when the Commission determined equipment was malfunctioning and missing. In August 2014, another ambulance had to be taken out-of-service due to issues with the vehicle's brakes and other deficiencies. Over the course of 2014, the Commission removed a total of three units from service.

In addition to these inspections, the Commission received correspondence from an employee of CFT complaining of deficiencies and hazards found in its ambulances. The employee testified at the hearing regarding the company's management practices. He testified that management exchanged a license plate from a certified unit for a non-certified unit, enabling a non-certified ambulance to appear to be a unit that had passed inspection. The employee also testified that management replaced a broken axle on one ambulance with an axle from a van and put a tire on, inside out, making tire pressure testing impossible.

CFT's deficiencies next resulted in a customer filing a complaint with the Commission in August 2015. The complaint alleged that an ambulance had no functioning air conditioning while transporting a patient. Due to this lack of air conditioning, the patient's body temperature became dangerously high, necessitating an emergency ambulance. Following this complaint, the Commission

3

conducted another inspection of CFT's ambulances and found several additional safety hazards as well as a lack of required equipment.

Based on documentation of the Commission's inspection results and the testimony at the hearing, the Commission decertified CFT as a licensed non-emergency ambulance provider. CFT failed to appear at the hearing due to an error on the company's part and petitioned the Commission for a rehearing. Namely, though CFT acknowledges proper service of a hearing notice, it alleges that the employee receiving the notice neglected to forward it up the chain of command. Accordingly, the hearing proceeded without a representative of CFT. Thereafter, upon learning of the Commission's adverse decision, CFT petitioned for a rehearing. The Commission denied the rehearing and issued a final order to decertify the company. CFT then appealed the Commission's decision to this Court.

### III. Standard of Review

The Commission is not one of the agencies itemized in Section 10161(a) of Delaware's Administrative Procedure Act ("APA").[1] Therefore, Subchapter III, Case Decisions, of the APA does not apply to the Commission.[2] Instead, a party suffering an adverse ruling by the Commission has a right to appeal to the Superior Court pursuant to Section 6611(a) of Title 16 of the Delaware Code. However, Section 6611(a) of Title 16 does not articulate the appropriate standard of review for such an appeal. Nevertheless, even though the statute is not clear regarding the standard of review, both parties agree that a substantial evidence and error of law

---

[1] 29 *Del. C.* § 10161(a).

[2] The inapplicability of the APA in this case includes the standard of review, notice, and other case decision related provisions outlined in the APA. 29 *Del. C.* §§ 10161(a), (b).

4

review is appropriate. In the absence of statutory direction, the Court will therefore determine whether the agency's decision was supported by substantial evidence and is free from legal error.[3]

Substantial evidence equates to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] Substantial evidence is "more than a scintilla but less than a preponderance."[5] On review, "the court is not authorized to make its own factual findings, assess credibility of witnesses or weigh the evidence."[6] Absent an error of law, the standard of review for a Board's decision is for abuse of discretion.[7] The Commission has abused its discretion only when it "acts arbitrarily or capriciously"[8] or when its decision has "exceeded the bounds of reason in view of the circumstances."[9]

---

[3] *E.g., Stoltz Mgmt. Co. v. Consumer Affairs Bd.*, 616 A.2d 1205 (Del. 1992); *Maurer v. Council on Police Training*, 2007 WL 625903, at *3 (Del. Super. 2007); *see also Bon Ayre Land LLC v. Bon Ayre Comty. Ass'n*, 133 A.3d 559, at *2 n.11 (Del. 2016) (Table) (explaining that even though the statute's language is unclear regarding the standard of review, the substantial evidence standard is appropriately applied).

[4] *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).

[5] *Id.* (quoting *Cross v. Califano*, 475 F.Supp. 896, 898 (D. Fla. 1979)).

[6] *Sokoloff v. Bd. of Med. Practice*, 2010 WL 5550692, at *5 (Del. Super. 2010).

[7] *Digiacomo v. Bd. Of Pub. Educ.,* 507 A.2d 542, 546 (Del. 1986).

[8] *PAL of Wilm. v. Grahm*, 2008 WL 2582986, at *4 (Del. Super. 2008).

[9] *Floundiotis v. State*, 726 A.2d 1196, 1202 (Del. 1999).

## IV. Discussion

**A. CFT was afforded constitutional due process protections.**

CFT argues that it was not provided due process protections by the Commission. While it received notice of the hearing, CFT argues that because the company did not appear at the hearing, it did not have an adequate opportunity to be heard. Both parties agree that CFT's professional license is property protected under the Due Process Clause, thereby triggering notice and hearing protections. However, the parties disagree regarding whether the Commission satisfied the hearing requirement. CFT argues that it did not waive its right to a hearing by failing to appear, and because it did not appear, the hearing requirement was not satisfied. In contrast, the Commission argues that CFT received proper notice of the hearing, and because the Commission held a hearing where CFT was entitled to present evidence and argue material facts, it was provided with an opportunity to be heard.

An administrative agency hearing is required to provide due process protections to its litigants.[10] Due process requires "providing the parties with the opportunity to be heard, by presenting testimony or otherwise."[11] It also "requires that the notice inform the party of the time, place, and date of the hearing and the subject matter of the proceedings."[12] CFT did not challenge the sufficiency of the notice before the Commission when it requested a rehearing or when it filed its Opening Brief on appeal. The Court's review is limited to the arguments properly raised below. Furthermore, for the reasons set forth herein, the Commission

---

[10] *See Vincent v. E. Shore Mkts.*, 970 A.2d 160, 164 (Del. 2009) (noting that the Industrial Accident Board is governed by due process requirements).

[11] *Id.*

[12] *Id.*

satisfied the requirements of the Due Process Clause of the Fourteenth Amendment.

In *Straley v. Advance Staffing Inc.*, in an unemployment matter, the Delaware Supreme Court was confronted with a similar issue.[13] There, a Claims Deputy denied Straley unemployment benefits.[14] Straley then appealed to an Appeals Referee where the Claims Deputy's decision was overturned.[15] When the employer appealed to the Unemployment Insurance Appeals Board (hereinafter the "Board"), Straley failed to appear for the hearing.[16] Despite her absence, the Board continued with the hearing and reversed the Appeals Referee's decision.[17] Straley appealed to the Superior Court claiming the Board violated her due process rights but the Superior Court upheld the Board's decision.[18] On appeal, the Delaware Supreme Court recognized that "Due Process is satisfied when notice is sent by a method reasonably calculated to afford the party an opportunity to be heard."[19] Because the Board provided Straley with notice of the hearing and the Board held a hearing to determine the appropriateness of an award of unemployment benefits, the Board satisfied due process requirements despite Straley's failure to appear at the hearing.[20]

---

[13] 984 A.2d 124 (Del. 2009) (Table).

[14] *Id.* at *1.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.* at 2.

[19] *Id.*

[20] *Id.*

Similarly, the Commission satisfied due process requirements. Namely, it provided CFT with notice of the hearing, which the company admits was delivered to its business. Additionally, the Commission provided the company with the opportunity to be heard. It held a hearing to address the alleged violations. During this hearing, the Commission was willing to hear testimony from both parties regarding CFT's failure to comply with the Commission's regulations. Had CFT appeared at the hearing, it could have introduced evidence in its defense. CFT failed to take advantage of its opportunity to be heard through no fault of the Commission. Accordingly, the Court does not find that CFT's failure to appear at its hearing deprived CFT of due process.

**B. CFT waived its argument regarding sufficiency of the notice; independent of this waiver, the APA notice provisions relied upon by CFT are inapplicable.**

In its Reply Brief, CFT, for the first time, raises an argument that the form of the notice below violated its due process rights. Specifically, CFT argues that because the Commission failed to provide it with notice in accordance with the APA's standards, it is due a new hearing with the opportunity to present evidence.

CFT correctly recognizes that the APA's notice requirements require more detail than otherwise required by the Due Process Clause. CFT points to two provisions in the APA that it alleges the Commission's notice violated. First, CFT looks to Section 10122 of the APA as it includes the basic requirements regarding the date, time, and place of the hearing and the right to counsel and subpoena witnesses. Section 10122 also includes notice requirements including the subject matter of the proceedings. CFT argues that the notice at issue contained no information regarding whether or not a choice of informal fact finding was permitted, nor did it include a sufficient description of the subject matter of the

proceedings, which violates this section's requirements.[21] CFT further relies upon Section 10131 of Title 29 in arguing that the Commission violated the APA by not providing notice that it was seeking a revocation of CFT's license.[22] CFT claims that the Commission's failure to adhere to the APA's specific statutory notice requirements invalidates the results of the hearing.

CFT's argument must be rejected for two reasons. Even if the Commission was required to adhere to the notice requirements identified by CFT, the issue was not properly raised. Due process rights regarding insufficient notice are subject to waiver when not properly raised.[23] CFT raised the lack of sufficient notice for the first time in its Reply Brief. Furthermore, CFT fails to point to a part of the record establishing that this issue was raised before the Commission and therefore waives this argument. Delaware courts consistently hold that when a party fails to raise an argument in its opening brief, that failure generally constitutes waiver of that claim.[24] Consequently, CFT waived its insufficient notice argument.

Independently, the text of the APA does not support CFT's reliance on its relevant provisions. Section 10161(a) of the APA enumerates the agencies that are bound by the provisions of the chapter.[25] The Delaware State Fire Prevention Commission is not an itemized agency in Section 10161(a).[26] As a result, the

---

[21] 29 *Del. C.* § 10122.

[22] 29 *Del. C.* § 10131.

[23] *See Christiana Town Ctr., LLC v. New Castle Cnty.*, 865 A.2d 521, at *3 (Del. 2004) (Table) (stating that notice and hearing due process rights are subject to waiver).

[24] *See, e.g.*, *Camtech School of Nursing and Technological Sciences v. Del. Bd. of Nursing*, 2014 WL 604980, at *2 n.29 (citing *Murphy v. State*, 632 A.2d 1150, 1152 (Del. 1993)) (noting that claims raised for the first time in Appellant's Reply Brief will not be considered).

[25] 29 *Del. C.* § 10161(a).

[26] *Id.*

Commission is not bound by the entirety of the APA's provisions. Instead, according to Section 10161(b), the agencies not listed in subsection (a) are only "subject to Subchapters I and II . . . and Sections 10141, 10144, and 10145. . ." of the APA.[27] The procedural violations alleged by CFT reference requirements found in Subchapters III and IV. Accordingly, the Court must reject CFT's argument that the APA notice violations resulted in a statutory or Due Process Clause violation.

## C. The Commission did not abuse its discretion.

CFT argues that the Commission's denial of a rehearing was an abuse of discretion and therefore should be reversed with a remand for a new hearing. In order to overturn the Commission's decision, CFT must show that the Commission abused its discretion by showing that it "act[ed] arbitrarily or capriciously"[28] or it "exceeded the bounds of reason in view of the circumstances."[29]

Delaware courts have addressed an agency's denial of a rehearing on several occasions. Consistently, Delaware courts refuse to find a denial of a rehearing to be an abuse of discretion.[30] Where an agency "followed its regulations, provided due notice to all parties involved," provided an opportunity to be heard, and then subsequently denied a rehearing, such a decision is not an abuse of discretion.[31]

---

[27] 29 *Del. C.* § 10161(b).

[28] *PAL of Wilm. v. Grahm*, 2008 WL 2582986, at *4 (Del. Super. 2008).

[29] *Floundiotis v. State*, 726 A.2d 1196, 1202 (Del. 1999).

[30] *E.g.*, *Petrilli v. Discover Bank*, 2012 WL 1415705, at *5 (Del. Super. 2012); *Kreider v. JC Penny Custom Decorating*, 2010 WL 2562210, at *2 (Del. Super. 2010); *Connors v. Mountaire Farms of Delmarva*, 1996 WL 453327, at *3 (Del. Super. 1996).

[31] *E.g.*, *Petrilli v. Discover Bank*, 2012 WL 1415705, at *5 (Del. Super. 2012); *see also Kreider v. JC Penny Custom Decorating*, 2010 WL 2562210, at *2 (Del. Super. 2010) (finding that the Unemployment Insurance Appeal Board did not abuse its discretion in denying a rehearing after the Board followed its regulations and provided notice and an opportunity to be heard); *Connors*

Here, as noted above, the Commission provided CFT with adequate notice of the hearing and an opportunity to be heard. Additionally, the Commission followed its regulations when decertifying the company. As such, it cannot be said that the decision to deny the rehearing was arbitrary or capricious. Likewise, its decision did not exceed the bounds of reason.

CFT also argues the Commission abused its discretion with regard to the severity of the sanction, while citing no comparatives for purposes of proportionality review. It merely argues that the decertification decision was disproportionate to the violations and therefore was an abuse of the Commission's discretion. According to CFT's argument, because the sanction is disproportionate, this Court has the authority to modify the Commissioner's order.

In support of this argument, CFT cites two Delaware Supreme Court cases that are inapplicable to the case at hand. In the cases cited by CFT, the Delaware Supreme Court was reviewing the Court of Chancery's decisions regarding whether to modify an order by Delaware's Securities Commissioner.[32] In both cases, the Delaware Supreme Court recognized the Court of Chancery's statutory power to modify a Commissioner's order on the basis that it was disproportionate.[33] When the Court of Chancery is undertaking a review pursuant to the Delaware Securities Act, it is statutorily permitted to review *de novo* the remedy ordered by the Commissioner.[34] In this case, there is no statutory authority

---

*v. Mountaire Farms of Delmarva*, 1996 WL 453327, at *3 (Del. Super. 1996) (finding that the Unemployment Insurance Appeal Board did not abuse its discretion in denying a rehearing where the Board followed its regulations and claimant failed to appear).

[32] *Hubbard v. Hibbard Brown & Co.*, 633 A.2d 345 (Del. 1993); *Blinder, Robinson & Co. v. Bruton*, 552 A.2d 466 (Del. 1989).

[33] *Hubbard*, 633 A.2d at 353; *Blinder, Robinson & Co.*, 552 A.2d at 475.

[34] *Hubbard*, 633 A.2d at 353; *see also* 6 *Del. C.* § 73-502(b) (granting the Court of Chancery the exclusive jurisdiction to modify an order of the Director under the Delaware Securities Act).

cited by CFT that permits the Superior Court to substitute its independent judgment regarding the appropriate sanction for the violation. As there is no similar statutory authority for the Superior Court to modify the State Fire Prevention Commission's orders, CFT's argument regarding disproportionality of the sanction has no merit.

**D. CFT's failure to appear was not excusable neglect.**

CFT next argues that the Superior Court should grant it relief from the Commission's final order pursuant to Superior Court Civil Rule 60 because its failure to appear was excusable neglect or mistake.[35] It claims that due to excusable neglect, CFT's senior management did not have knowledge of the hearing. Accordingly, CFT argues that the company's failure to appear was a mistake, and therefore, the Superior Court should grant it relief from the Commission's final order which in effect closed the company. CFT further contends that the State's policy of hearing cases on the merits rather than by default further supports its argument for relief under Rule 60.

Foremost, the Court notes that Superior Court Civil Rule 60 does not apply to a final order issued by an administrative agency. Superior Court Civil Rule 60 provides relief only from a Superior Court final judgment or order. Nevertheless, in applying that standard to the agency's decision, as urged by CFT, the Court does not find excusable neglect.

Relief from judgment under Rule 60 requires the moving party to show "valid reasons for the neglect—reasons showing that the neglect may have been

---

[35] The rule provides the Superior Court with the authority to relieve a party from a final judgment, order, or proceeding for the following reasons: "[m]istake, inadvertence, surprise, or excusable neglect." *Del. Super. Ct. Civ. R.* 60(b)(1).

12

the act of a reasonably prudent person under the circumstances."[36] Furthermore, "a mere showing of negligence or carelessness without a valid reason may be deemed insufficient."[37]

Here, CFT contends its negligence was the result of a part-time employee and the stress of the holiday season. Even if the Court were to review the issue at hand, *de novo*, as CFT seems to urge, this does not constitute excusable neglect. From the licensee's perspective, it exhibited mere carelessness without a valid reason.

In *Apartment Communities Corp. v. Martinelli*, the Delaware Supreme Court addressed the issue of excusable neglect by looking to federal precedent due to the similarities between the Superior Court Civil Rules and the Federal Rules of Civil Procedure.[38] There, the Delaware Supreme Court reviewed federal case law in determining whether an employee failing to inform the company that it was served with a compliant constituted excusable neglect.[39] The Supreme Court held it was not excusable neglect after relying on a case from the United States Court of Appeals for the Fifth Circuit where a company failed to respond to a complaint because of a mistake by a commercial carrier in his attempt to deliver the document from an employee to the company's claims office.[40] The Delaware Supreme Court found persuasive the reasoning that "the corporation should have implemented at least minimum internal procedural safeguards to avoid such

---

[36] *Dishmon v. Fucci*, 32 A.3d 338, 346 (Del. 2011).

[37] *Id.*

[38] 859 A.2d 67, 70—71 (Del. 2004).

[39] *Id.* at 70.

[40] *Id.* at 71 (citing *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933 (5th Cir. 1999)).

mishaps."[41] Similarly, in *Martinelli*, the Court relied upon the United States Court of Appeals for the Eleventh Circuit holding in a case where a mail clerk misplaced a complaint, which also did not constitute excusable neglect.[42]

In *Martinelli*, the Delaware Supreme Court refused to find excusable neglect stating that "it was the responsibility of the defendant . . . to ensure that all employees who are capable of accepting service of process know when and to whom the complaint should be forwarded."[43] The Court went on to state that "when service of a complaint is complete and legal, it is immaterial that the agent does not communicate the fact of service to the principal."[44] Due to the company's failure to implement safeguards to avoid such a situation, the Delaware Supreme Court refused to find excusable neglect.[45] For purposes of this analysis, service of a civil complaint does not meaningfully differ from a notice of an administrative hearing. This Court cannot find CFT's failure to appear at the hearing to be excusable neglect on the basis of the part time employee's failure to forward the notice to senior management.

Furthermore, the fact that the company was busy due to the holiday season is not grounds for finding excusable neglect. In *Cohen v. Brandywine Raceway Ass'n*, the Superior Court was faced with an excusable neglect argument based on a similar claim.[46] In that case, the office manager received the amended complaint but failed to ensure that appropriate personnel in the company were aware of it

---

[41] *Id.* (quoting *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933 (5th Cir. 1999)).

[42] *Id.* (citing *Gibbs v. Air Can.*, 810 F.2d 1529, 1537 (11th Cir. 1987)).

[43] *Id.*

[44] *Id.* 71—72.

[45] *Id.*

[46] 238 A.2d 320, 325 (Del. Super. 1968).

because that employee was exceptionally busy because of the Christmas season.[47] Likewise, the Commission's denial of a rehearing cannot be said to have been an abuse of discretion when evaluated pursuant to the standards of Superior Court Civil Rule 60(b)(1).

**E. The Commission's decision to decertify CFT is supported by substantial evidence and is free from legal error.**

Section 6604 of Title 16 of the Delaware Code provides the Commission with the authority to formulate rules and regulations. Pursuant to this authority, the Commission enacted Regulation 7.10 (12.1) which provides the Commission with the authority to revoke an ambulance service provider's license.[48] Regulation 710 (12.3) further delineates when the Commission may revoke a license.[49] The Commission identifies two such provisions that justified it in revoking CFT's license: (1) violation of any provision of the regulations, and (2) demonstration of the licensee's gross negligence, incompetence, or misconduct.[50]

At the hearing, the State, on behalf of the Commission, submitted evidence of several inspections where the Commission found violations of the regulations. Generally speaking, the various inspections found deficient equipment and safety hazards. The results of these inspections frequently required the Commission to place CFT's ambulances out-of-service.

Additionally, at the hearing there was testimony from a former employee of CFT. He testified that management took a license plate from a certified unit and

---

[47] *Id.*

[48] 17 DE Reg. 982 (04/01/14).

[49] *Id.*

[50] *Id.*

placed it on a non-certified unit, enabling the non-certified ambulance to appear to be a unit that had passed inspection. The employee also testified that management replaced a broken axle in an ambulance with an axle from a van and put a tire on inside out, rendering the tire unable to be pressure tested. Such action by management certainly constitutes misconduct.

The Commission's order outlined the specific facts found and the evidence submitted which formed the bases for its conclusions. In light of the evidence of non-compliance throughout the six year span in which CFT was licensed, there was substantial evidence to support the Commission's decision. Furthermore, the Commission's decision was free from legal error.

## V. Conclusion

For the aforementioned reasons, the Commission's decision to decertify CFT is supported by substantial evidence and is free from legal error. The Commission's refusal to grant a rehearing was not an abuse of discretion. Accordingly, its decision to decertify CFT is **AFFIRMED**.

**IT IS SO ORDERED**

/s/Jeffrey J Clark
Judge

16