**REHOBOTH ART LEAGUE, INC., Appellant,**

v.

**BOARD OF ADJUSTMENT OF the TOWN OF HENLOPEN ACRES, Appellee.**

No. 551, 2009.

Supreme Court of Delaware.

Submitted: Feb. 17, 2010.
Decided: March 29, 2010.

Michael F. Bonkowski, Cole, Schotz, Meisel, Forman, & Leonard, P.A., Wilmington, Delaware; Vincent G. Robertson, Griffin & Hackett, P.A., Lewes, Delaware for appellant.

Collins J. Seitz, Jr., Max B. Walton, and Jeremy D. Anderson, Connolly Bove Lodge & Hutz LLP, Wilmington, Delaware; Richard E. Berl, Jr., Smith O'Donnell Feinberg & Berl LLP, Georgetown, Delaware for appellee.

Before STEELE, Chief Justice, BERGER and JACOBS, Justices.

STEELE, Chief Justice.

The Rehoboth Art League, Inc. appeals from a Superior Court judgment affirming the decision of the Town of Henlopen

Acres Board of Adjustment denying RAL a use variance for a proposed replacement building and an area variance for a parking lot. RAL contends that: (1) the Board's proceedings violated RAL's due process rights, (2) the Board impermissibly prejudged the issues, and (3) the Board made its decision without substantial evidence. Because we find RAL failed to preserve its first argument, misconstrues the context of the board members' comments in the second argument, and disregards the record in the third, we **AFFIRM** the judgment of the Superior Court.

### Factual and Procedural Background

RAL owns two residentially zoned adjoining lots within the town of Henlopen Acres.[1] To accommodate the increasing number of members and activities, RAL determined that it needed to renovate the existing buildings on the lots. RAL halted or curbed its plans after an architect and a structural engineer reported that the historic character of the Homestead Building, the location of the Corkran Building in a FEMA flood plan, and the significant denigration of the Chambers Studio, rendered renovation unfeasible. In light of the inability to renovate the existing structures, RAL decided to demolish one of the existing buildings and replace it with a significantly larger building. RAL also planned to demolish a drying shed to increase the number of parking spaces from forty to forty-four.

RAL submitted its "demolition and replacement" application to the Henlopen Acres building official. The building official ultimately denied RAL's application, concluding that RAL's plan violated the setback requirements of the Town Code

because the property was not a single lot. Section 130–12(D) of the Town Code prohibited the rebuilding of a nonconforming structure absent certain, limited circumstances; and Section 130–4 limited parking to a maximum of three vehicles.

RAL appealed the building official's decision to the Board. During the public hearing on August 21, 2007, David Hill, a Town Commissioner and the Town Treasurer, asked to participate in the proceedings in his "individual capacity as a property owner in Henlopen Acres." Hill opposed the variances, but explained that his views did not necessarily represent those of the Town. RAL's attorney did not object to Hill's participation, only to testimony or cross-examination that Hill might elicit from a town employee.

Before the Board, RAL argued that their inability to renovate the existing buildings necessitated a new building. Concerned about the size of the proposed replacement building, the Board left the record open to obtain additional information and to acquire written closing statements and legal arguments. When the Board reconvened on November 7, 2007, it upheld the building official's ruling and denied the use variance for the proposed replacement building. Because the Board denied the use variance, it considered the area variance for the parking lot moot.

### Claims on Appeal

RAL petitioned the Superior Court for relief. The Superior Court issued an Order affirming all but the Board's decision to treat the property as two separate lots. RAL appeals from the Superior Court's judgment and advances three assignments of error: (i) the appearance of the Commissioner Hill before the HABOA violated

---

**1.** Because Section 130–10 of the Zoning Code permits only one building per lot and RAL conducts commercial activities on its residentially zoned lots, the Code considers the property and structures nonconforming.

its due process rights, (ii) the HABOA prejudged the issues and did not thoughtfully analyze the facts and the law, and (iii) the Superior Court incorrectly held that the HABOA decision was supported by substantial evidence.

### Standard of Review

■ Upon review of a Board decision, we apply the same standard as applied by the Superior Court. We limit our review to correcting errors of law and determining whether substantial evidence exists to support the Board's findings of fact.[2] When substantial evidence exists, we will not reweigh it or substitute our own judgment for that of the Board.[3]

### Discussion
### I. HILL'S PARTICIPATION IN THE HEARING

■ RAL first contends that Hill's appearance before the Board violated its due process rights. Specifically, RAL claims that because Hill was a Town Commissioner with voting power to approve and remove Board members, his presence at the hearing constituted duress and prevented the Board from acting impartially.

RAL claims that it preserved this argument in its response to Hill's motion to intervene when it noted that Hill, in his capacity as a Town Commissioner, voted to appoint and authorize the counsel that represented the Town and the Board in the proceedings. This fact, without more, introduced in the context of why Hill's attorneys adequately represented his interests, insufficiently presented to the Superior Court an argument questioning the Board's objectivity.

In addition, RAL did not object to Hill's participation in the Board's hearing. RAL acknowledged at the hearing that Hill wore "two hats"—as a resident of Henlopen Acres and a commissioner—and explicitly stated "[h]e can certainly participate." RAL's failure to make a proper objection of bias or request a recusal when it knew the circumstances for potential bias at the time the hearing, waives the claim of error.

Even if RAL had preserved its argument on appeal, we would find it to be unpersuasive. Hill's appearance before the Board is distinguishable from the appearances of the officials in *Barkey v. Nick*[4] and *Abrahamson v. Wendell*[5]—cases relied on by RAL. In *Barkey*, the city commissioner, possessing the power to appoint members of the zoning board, represented his brother and sister-in-law in their request for a special exception. In *Abrahamson*, the township supervisor, also possessing the power to appoint members of the zoning board, appeared before the board on behalf of the variance proponents as their contractor. The court found it "difficult to believe the supervisor did not in fact have a conflict of interest between personal profit and public duty."[6]

Here, Hill did not represent his family members nor did he represent an employer. Hill stated that he was participating in

---

**2.** *Janaman v. New Castle County Bd. of Adjustment,* 364 A.2d 1241, 1241 (Del.Super.1976), *aff'd,* 379 A.2d 1118 (Del.1977) (TABLE); *Cooch's Bridge Civic Ass'n v. Pencader Corp.,* 254 A.2d 608, 609–10 (Del.1969). *See* also *Sawers v. New Castle County Bd. of Adjustment,* 550 A.2d 35 (TABLE), 1988 WL 117514, at \*2 (Del. Oct. 26, 1988).

**3.** *Groves v. Bd. of Adjustment of Sussex County,* 1987 WL 25469, at \*1 (Del.Super. Nov. 10, 1987) (citing *Searles v. Darling,* 83 A.2d 96 (Del.1951)).

**4.** 11 Mich.App. 381, 161 N.W.2d 445 (1968).

**5.** 76 Mich.App. 278, 256 N.W.2d 613 (1977).

**6.** *Id.* at 615.

his individual capacity as a property owner in Henlopen Acres and his views were not the views of the town. Therefore, his statements should carry no additional weight than would a statement, comment, evidence, or other information made or given by any other member of the public.

## II. PREJUDGING THE ISSUES

■ RAL next contends that the Board failed to act impartially, thereby denying RAL due process. Specifically, RAL argues that two Board members (Smith and Kenney) impermissibly prejudged the issues, and then dominated the Board's deliberations so that the other Board members deferred to their opinions. RAL relies on two incidents at the hearing to demonstrate Smith and Kenney's bias: (1) a dialogue between the two Board members and RAL's counsel; and (2) a statement by Smith that "the variances gradually lessening each year is a longtime goal of the residential community."

In the first incident, RAL claims that Smith and Kenney essentially denied the application before hearing any substantive evidence. After delivering his opening remarks, RAL's counsel argued that the "one lot/two lot" issue was strictly a legal question and did not require any additional evidence outside of the "documentation" presented by him. Then the following dialogue occurred:

> SMITH: I don't think it is a legal argument. Do you, Peter?

KENNEY: I think there are issues that should be addressed on the one-lot/two-lot.

COUNSEL: Well, I'm certainly going to address those, and I think we can do it through legal arguments that show why you are all bound to find that it actually must be considered one property.

KENNEY: I don't agree.

COUNSEL: Well, you know, I have to object to that statement because you haven't heard my argument, and if you are going to state on the record that you've already made up your mind, that's a problem.

KENNEY: No. The facts indicate otherwise, but go ahead.

■ A hearing before a *neutral* arbiter is a fundamental element of due process. Thus, a board member who "publicly expresses a preconceived view" or conducts himself as an actual adversary in earlier proceedings is disqualified from presiding over later hearings about the particular case in controversy.[7] Nevertheless, pre-hearing comments by an administrative adjudicator adverse to the position of the applicant *are not necessarily* grounds for disqualification.[8] When determining whether recusal is appropriate, we focus on whether the board members considered RAL's application in an appropriate process free from corruption, bribery or other illegal means.[9]

■ Here, RAL does not question whether the board members had a pecuniary interest in the outcome of the application or if they had a conflict of interest;[10]

---

7. *Acierno v. Folsom,* 337 A.2d 309, 316 (Del. 1975).

8. *Levinson v. Del. Compensation Rating Bureau, Inc.,* 616 A.2d 1182, 1191 (Del.1992).

9. *Pettinaro Ent. v. Stango,* 1992 WL 187625, at *5 (Del.Ch. July 24, 1992).

10. *Blinder, Robinson & Co., Inc. v. Bruton,* 552 A.2d 466, 473 (Del.1989) (citing *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975)).

rather, the principal thrust of RAL's complaint targets statements made by the board members *during* the hearing. Board members are entitled to have a view of the evidence and express that view during a hearing held to deliberate on the issue.[11]

Furthermore, when one considers the Board members' comments in their proper context, they do not adequately demonstrate a preconceived bias regarding the merits of RAL's applications such as would deny due process. As the Superior Court reasoned, the Board members merely disagreed with RAL's adamant argument that the one lot/two lot issue was strictly a legal question and expressed their desire to consider and resolve certain facts before the one lot/two lot issue was ready for legal determination.

Finally, Smith's reference to the Board's general goal of reducing the number of variances over time is consistent with the general principle that zoning boards and commissions should not liberally grant variances.[12] Thus, RAL's allegations are insufficient to overcome the "strong presumption" of the honesty and integrity of administrative adjudicators.

### III. SUBSTANTIAL EVIDENCE

 Lastly, RAL argues that there is no substantial evidence in the record to support the Board's denial of the variance. A use variance permits an owner to use a particular parcel of property in a manner otherwise prohibited by applicable law. To obtain a use variance, the applicant must demonstrate "unnecessary hardship," generally meaning that: (1) the property

cannot yield a reasonable return when used only for the permitted use; (2) the need for the variance is due to unique circumstances and not general conditions in the neighborhood; (3) the use sought will not alter the essential character of the locality; and (4) all uses permitted on the land under existing zoning are economically unfeasible.[13]

██ The Board's decision to deny the use variance rested primarily on its conclusion that RAL's proposed building would alter the essential character of the locality. Specifically, the Board was concerned with the size of the proposed building and the growth of RAL's activities that it would permit. Substantial evidence in the record supports that concern. The existing Chambers Building is a one-story structure of approximately 2,500 square feet. The proposed building would have 5,645 square feet partially below grade and 5,630 square feet above grade, resulting in a total of 11,275 square feet. Even if the cellar space is not considered, (as RAL argues that Town Code requires), RAL plans almost double the size of the current Chambers Studio. RAL failed to demonstrate that unnecessary hardship would result from the denial of the use variance for the particular plan it presented to the Board.

### IV. CONCLUSION

Because the Board adjudicated the hearing with an open mind; presented a fair hearing in which RAL received due process; and supported its findings of fact with substantial evidence, we find RAL's claims of error unpersuasive. Therefore,

11. *Lynch v. City of Rehoboth Beach*, 2005 WL 1074341, at *5 (Del.Ch. Apr. 21, 2005). *See also Pettinaro*, 1992 WL 187625, at *5.

12. *Mackes v. Fenwick Island*, 2007 WL 441954, at *5 (Del.Super. Feb. 8, 2007).

13. *CCS Investors, LLC v. Brown*, 977 A.2d 301, 316 (Del.2009).

the judgment of the Superior Court is **AFFIRMED.**