# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

WILLIAM FASANO,                          )
                                         )
    Appellant,                           )
                                         )
    v.                                   )
                                         )    C.A. No. N25A-04-002 CLS
DELAWARE DEPARTMENT OF                   )
NATURAL RESOURCES AND                    )
ENVIRONMENTAL CONTROL,                   )
                                         )
    Appellee.                            )

Date Submitted: July 22, 2025
Date Decided: October 31, 2025

## MEMORANDUM OPINION

*On Appeal from the Merit Employee Relations Board,*
**AFFIRMED.**

Kate L. Butler, Esquire of KATE BUTLER LAW, LLC, *Attorney for Appellant.*

Devera Breeding Scott, Deputy Attorney General of the DELAWARE DEPARTMENT OF JUSTICE, *Attorney for Appellee.*

**SCOTT, J.**

**INTRODUCTION**

This matter comes before the Court on appeal by William Fasano from a decision of the Merit Employee Relations Board to uphold his termination from his position as Park Superintendent for the Delaware Department of Natural Resources and Environmental Control. The Board found that Mr. Fasano's termination was supported by just cause. Mr. Fasano contends that: (1) the Board legally erred by determining the penalty was appropriate under the circumstances; (2) the Board's decision was not supported by substantial evidence; and (3) the Board's proceedings violated Mr. Fasano's due process rights.

For the reasons set forth below, the Board's decision was supported by substantial evidence, free from legal error, and afforded Mr. Fasano his specified due process rights. Thus, the Board's decision is **AFFIRMED**.

**FACTUAL AND PROCEDURAL BACKGROUND**[1]

I. **FACTUAL BACKGROUND**

William Fasano worked as a Park Superintendent of Bellevue State Park for over 10 years for the Delaware Department of Natural Resources and Environmental Control ("DNREC") before he was terminated on April 8, 2021. As Park Superintendent, Mr. Fasano was responsible for the "overall operations" of Bellevue

---

[1] The facts are derived from Record of the Merit Employee Relations Board ("MERB"), Docket No. 21-05-803 (hereinafter "R. at __).

State Park, including the management of: park finances that involved a multi-million dollar budget, park employees, and natural and cultural resources.[2] Park Superintendents are held to a high standard of conduct given the nature of their responsibilities. Mr. Fasano received satisfactory performance reviews as Park Superintendent for DNREC.[3]

DNREC authorized its employees to lease vehicles from Fleet Services. The Fleet Services Handbook restricted the use of a Fleet vehicle to official State business and required drivers to abide by Delaware traffic laws.[4] All Fleet vehicles were equipped with a GPS tracking system. Mr. Fasano signed the Fleet Services Authorized Designation Application when he began employment with DNREC and operated a Fleet vehicle as a Park Superintendent.[5]

On Saturday January 16, 2021, Mr. Fasano violated Fleet Services' policies by speeding in his authorized Fleet vehicle and using the vehicle for a personal errand. From January 20, 2021 until February 23, 2021, Mr. Fasano denied that he was driving the Fleet vehicle on January 16, 2021. Mr. Fasano had multiple opportunities to explain what happened and he continued to tell his supervisors and Human Resources personnel "that it was not him who had been driving."[6]

---

[2] R. at 219.
[3] R. at 93–103.
[4] R. at 122, 123.
[5] R. 129–30.
[6] R. at 222.

On February 23, 2021, Mr. Fasano met with Susan Staats, Regional Park Administrator and Mr. Fasano's supervisor; Tonya Brady, DNREC Human Resources Employee and Labor Relations Specialist; and Grant Melville, DNREC Parks Operations Section Manager. After Mr. Melville showed security footage identifying Mr. Fasano at a Goodwill one minute after the Fleet vehicle was turned off in the parking lot of Goodwill on January 16, 2021, Mr. Fasano admitted to being the driver.[7] Mr. Fasano, however, explained that he suffered from Post Traumatic Stress Disorder ("PTSD") and on the day in question, "he had a dissociative episode, and he did not . . . remember what . . . occurred that day."[8]

In a letter dated March 3, 2021 ("Suspension Notice"), Ms. Staats informed Mr. Fasano that, as a result of the January 16, 2021 speeding violation and his untruthfulness about being the driver, he was being recommended for a three-day suspension without pay pending "[a]dditional disciplinary action . . . [upon] further review of [his] conduct and actions in [the] matter."[9]

According to Mr. Melville, Mr. Fasano was not recommended for termination at the time of the suspension because Mr. Fasano "raised a lot of mental health issues" that needed to be addressed with Human Resources first.[10] Mr. Melville

---

[7] R. at 161–63.
[8] R. at 224.
[9] R. at 170.
[10] R. at 234.

explained that the recommended suspension gave DNREC the ability to "remove Mr. Fasano from his position at the park while . . . trying to figure out the full ramifications of [the] investigation."[11]

Further investigation revealed additional misconduct, including: (1) Mr. Fasano's use of his State computer for his "Video Trading hobby;"[12] (2) use of his Fleet vehicle to visit Goodwill three different times on September 2, 2020 and September 13, 2020; and (3) that the GPS on Mr. Fasano's Fleet vehicle was disabled from September 13, 2020 until January 7, 2021.[13]

Nine days later, in a letter dated March 12, 2021 ("Termination Notice"), Mr. Melville informed Mr. Fasano that he was being recommended for termination of his employment with DNREC.[14] The Termination Notice stated,

> As a Park Superintendent, DNREC expects a high degree of candor, truthfulness, and integrity for your position of great responsibility as you are ultimately responsible for an entire State park. Your demonstrated mistruths regarding the use of the State vehicle were only established by obtaining video confirming your use instead of you admitting to your misconduct of your own accord. This compounded the already very serious issues relating to your personal use of the State-owned vehicle and your misuse of the State's computer equipment and network. The result is a complete loss of confidence and trust in your ability to exercise good judgment . . . in your very responsible capacity as Park Superintendent.[15]

---

[11] R. at 234.
[12] R. at 174.
[13] R. at 173.
[14] R. at 173–75.
[15] R. at 174–75.

The Termination Notice also stated that Mr. Fasano's conduct was in direct violation of Fleet Services' Operating Policies and Procedures and DTI"s Acceptable Use Policy.[16]

Mr. Fasano then requested a pre-decision meeting with Raymond Bivens, Delaware State Parks Director. The meeting occurred on March 31, 2021. After reviewing the relevant information, including a prepared statement from Mr. Fasano, Mr. Bivens sent a letter dated April 1, 2021, upholding the termination action. [17] In a letter dated April 8, 2021, Shawn Garvin, Secretary of DNREC, informed Mr. Fasano that his employment was terminated, effective immediately.[18]

## II. PROCEDURAL HISTORY

Mr. Fasano appealed his termination to the Merit Employee Relations Board (the "Board). On November 24, 2021, DNREC filed a motion to dismiss, arguing that the notice of appeal was untimely. In February 2022, the Board denied the motion without prejudice because DNREC did not provide sufficient evidence to show Mr. Fasano's notice of appeal was untimely.

The Board held a hearing on the merits of Mr. Fasano's grievance on June 16, 2022. DNREC called five witnesses: Ms. Staats, Mr. Melville, Ms. Brady, Sharae Goff, Human Resources Associate with the Department of Human Resources

---

[16] R. at 174–75.
[17] R. at 185, 200–04.
[18] R. at 187.

("DHR"), and Theresa Williams, a receptionist for DHR. Mr. Fasano called two witnesses: David Koller, Esquire and Paul Kenton, Esquire. The Board entered 27 exhibits into evidence. After its case-in-chief, DNREC renewed its motion to dismiss Mr. Fasano's appeal as untimely.

On July 26, 2022, the Board issued a decision finding that Mr. Fasano's appeal to the Board was untimely.[19] Mr. Fasano appealed the Board's decision to this Court. This Court remanded the case to the Board, concluding that that the Board erred by misapplying the mailbox rule.[20] Accordingly, this Court found that Mr. Fasano filed a timely notice of appeal on May 10, 2021.[21]

The Board held a hearing on remand from this Court on May 15, 2024. The Board heard testimony from Mr. Fasano and Mr. Fasano's therapist, Marcia Winters, on behalf of Mr. Fasano. The Board entered 28 exhibits into evidence. The Board based its decision on both the June 16, 2022 and May 15, 2024 hearings.

On March 6, 2025, the Board issued its decision on the merits of the case.[22] The Board found that DNREC had just cause to terminate Mr. Fasano under Merit Rule 12.1. First, the Board found that DNREC provided sufficient evidence to show

---

[19] *See generally Fasano v. Del. Dep't of Nat. Res. and Env't Control*, MERB Docket No. 21-05-803 (July 26, 2022).
[20] *Fasano v. Del. Dep't of Nat. Res. and Env't Control*, 2024 WL 469638, at **3 (Del. Super. Feb. 2, 2024).
[21] *Id.*
[22] *See generally Fasano v. Del. Dep't of Nat. Res. and Env't Control*, MERB Docket No. 21-05-803 (Mar. 6, 2025) ("MERB Decision").

that Mr. Fasano violated the Fleet Services' Operating Policies and Procedures, violated the DTI Acceptable Use Policy, and lied to his supervisors about the January 16, 2021 incident. Next, the Board concluded that Mr. Fasano was afforded due process because he was given notice stating the reasons for his termination and was afforded a pre-decision meeting. Finally, the Board found that the termination was an appropriate penalty under the circumstances based on mitigating and aggravating factors. The Board explained that Mr. Fasano's satisfactory performance reviews and mental health revelations did not outweigh the fact that Mr. Fasano's actions fell below the high standard of professional conduct he was held to as a Park Superintendent. Mr. Fasano now appeals the Board's decision.[23]

## STANDARD OF REVIEW

The Court reviews decisions of the Merit Employee Relations Board only to determine whether the decision is free from legal error and whether the Board's findings are supported by substantial evidence.[24]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"[25]—it "falls somewhere between a

---

[23] *See generally* William Fasano's Opening Brief, D.I. 10 ("Opening Br.").

[24] *Gibson v. Merit Emp. Rels. Bd.*, 2010 WL 2877234, at *3 (Del. Super. June 17, 2010) (citations omitted).

[25] *Baxter v. Verizon Commc'ns*, 2024 WL 3581660, at *3 (Del. Super. July 30, 2024). (quoting *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981)).

scintilla and a preponderance of the evidence."[26] It is not the Court's role to "independently weigh the evidence, determine questions of credibility, or make its own factual findings, but rather, to 'view the record in the light most favorable to the prevailing party below.'"[27]

The Court "reviews questions of law, including claimed constitutional violations and the interpretation of statutes and regulations, *de novo*."[28]

## DISCUSSION

On appeal, Mr. Fasano raises various arguments. First, Mr. Fasano proffers that the Board committed legal error by considering untruthfulness in upholding his termination. Second, Mr. Fasano argues that the Board's decision lacked substantial evidence. Third, Mr. Fasano claims that his specified due process rights were violated throughout the proceedings on numerous grounds.

### I. THE ISSUE OF RETALIATION IS WAIVED.

As a preliminary matter, Mr. Fasano's argument concerning retaliation under 29 *Del. C.* § 5931(c) is waived. In general, "[w]hen the Court acts in its appellate capacity on an appeal from an administrative agency, it is limited to the record and

---

[26] *Diamon Fuel Oil v. O'Neal*, 734 A.2d 1060, 1062 (Del. 1999) (citing *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988)).

[27] *United Parcel Serv. v. Willis*, 2024 WL 5039034, at *6 (Del. Super. Dec. 6, 2024) (citing *Kelley v. Perdue Farms*, 123 A.3d 150, 153 (Del. Super. 2015); *Wyatt v. Rescare Home Care*, 81 A.3d 1253, 1258–59 (Del. 2010)).

[28] *Stanford v. Merit Emp. Rels. Bd.*, 2012 WL 1549811, at *3 (Del. Super. May 1, 2012) (citing *Avallone v. DHSS et al.*, 14 A.3d 566, 570 (Del. 2011); *Ward v. Dep't of Elections*, 977 A.2d 900 (Del. 2009)).

will not consider issues not raised before the agency."[29]  The waiver rule encourages "agencies to apply their own specialized expertise, correct their own errors, and discourage litigants from reserving issues for appeal."[30]

Mr. Fasano claims that DNREC retaliated against him for exercising his right to a pre-decision meeting of the recommended three-day suspension.[31]  DNREC contends that Mr. Fasano's Section 5931(c) argument is waived because it was not raised below.[32]  Mr. Fasano posits that the issue of retaliation was "implicitly raised and recognized by [the Board] itself" because it questioned the nine-day period between the Suspension Notice and the Termination Notice.[33]

The Court finds Mr. Fasano's argument lacks merit.  Mr. Fasano does not provide authority for the assertion that an issue can be implicitly raised.  Mr. Fasano had ample opportunity to raise the issue of retaliation, including—as Mr. Fasano points out—when the Board addressed the timing of the Suspension Notice and Termination Notice.  Nothing in the record shows that the issue of retaliation was

---

[29] *Lewis v. Dep't of Agric.*, 2007 WL 315359, at * 4 (Del. Super. Jan. 31, 2007) (quoting *Potts Welding & Boiler Repair Co. v. Zakrewski*, 2002 WL 144273, at *4 (Del. Super. Jan. 11, 2002)) (internal quotation marks omitted).
[30] *Lewis*, 2007 WL 315359, at * 4 (quoting *Down Under, Ltd. v. Alcoholic Beverage Control Comm'n*, 576 A.2d 675, 677 (Del. Super. 1989)) (internal quotation marks omitted).
[31] Opening Br. at 22–23.
[32] DNREC's Answering Brief, D.I. 18, at 22–23 ("DNREC Answering Br.").
[33] William Fasano's Reply Brief, D.I. 20, at 14 ("Reply Br.").

presented to the appropriate tribunal: the Board.[34] Consequently, the Court will not consider the issue of retaliation under 29 *Del. C.* § 5931.

## II. THE BOARD'S DECISION TO UPHOLD MR. FASANO'S TERMINATION IS FREE FROM LEGAL ERROR.

Mr. Fasano argues that the Board erred by concluding that termination was an appropriate penalty under the circumstances.[35] Mr. Fasano claims it was legal error for the Board to consider his untruthfulness because it was not included in the Termination Notice.[36] Because the Board could not consider untruthfulness in its decision, Mr. Fasano avers that termination for a speeding violation and computer misuse was not an appropriate penalty under the circumstances.

Under Merit Rule 12.1, an employee may be disciplined only for just cause— i.e., "management has sufficient reasons for imposing accountability."[37] Just cause requires a "showing that the employee committed the charged offense;  offering specified due process rights . . .;  and imposing a penalty appropriate to the circumstances."[38] In *Vann v. Town of Cheswold*, the Delaware Supreme Court defined "just cause" as "a legally sufficient reason supported by job-related factors

---

[34] *Zakrewski*, 2002 WL 144273, at *4.
[35] Opening Br. at 11–12.
[36] *Id.* at 12, 13.
[37] *See also* 19 *Del. Admin. C.* § 3001-13.1.
[38] *Id.*

that rationally and logically touch upon the employee's competency and ability to perform his duties."[39]

The Court disagrees with Mr. Fasano. The Termination Notice expressly indicates that Mr. Fasano's untruthfulness was a reason for his termination. Further, Mr. Fasano does not dispute that Park Superintendents are held to a high standard of conduct based on the responsibilities entrusted to them by DNREC. Therefore, the Board did not legally err by considering Mr. Fasano's dishonesty in upholding his termination as it is not only included in the Termination Notice but is also a job-related factor that rationally and logically touches upon Mr. Fasano's competency and ability to perform his duties.

### III. THE BOARD'S DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

Mr. Fasano next argument on appeal states that the Board lacked substantial evidence to find that Mr. Fasano violated the DTI Acceptable Use Policy, disabled his Fleet vehicle's GPS, and used the Fleet vehicle to go to Goodwill on September 2, 2020 and September 13, 2020. DNREC claims that the Board's decision was supported by substantial evidence, even "without the allegations about Mr. Fasano's improper use of state equipment and vehicles[.]"[40]

---

[39] 945 A.2d 1118, 1122 (Del. 2008).
[40] DNREC Answering Br. at 19.

The Court agrees with DNREC. On January 16, 2021, Mr. Fasano was speeding in the Fleet vehicle, which he used for a personal trip to Goodwill. Both actions are: violations of Fleet Services Policies and Operating Procedures; these facts are undisputed by Mr. Fasano; supported by surveillance footage and a receipt from Goodwill; and confirmed by the GPS systems installed in Fleet vehicles.

Moreover, DNREC presented the Board with evidence that Mr. Fasano was untruthful. Mr. Fasano challenged DNREC's evidence by explaining to the Board that his mental health issues caused him to forget he was driving and presenting satisfactory performance reviews. Ultimately, the Board chose to accept DNREC's evidence over Mr. Fasano's. The Board makes clear that its decision is based on inconsistencies in Mr. Fasano's and Ms. Winter's testimony and the standard of conduct to which Park Superintendents are held.

The Court "will not re-examine the evidence presented to an administrative board in order to reach its own factual conclusions."[41] Nothing in the record indicates that the evidence supporting the Board's decision is unreasonable. In conclusion there is substantial evidence of Mr. Fasano's actions on January 16, 2021, and his dishonesty thereafter, regardless of whether there was substantial evidence of State computer misuse, additional trips to Goodwill in September 2020, and a disabled GPS.

---

[41] *Gibson*, 2010 WL 2877234, at *4.

## IV.  MR. FASANO'S DUE PROCESS RIGHTS WERE NOT VIOLATED.

Mr. Fasano argues that he was not afforded a fair hearing because termination was improper under the doctrine of industrial double jeopardy;  the Deputy Attorney General had a conflict of interest based on representation of DNREC before remand and representation of the Board after remand;  the Board issued its decision late in violation of 29 *Del. C.* § 5949(a);  and that the Chairperson of the Board acted with a closed mind.

### A. The Suspension Notice does not invoke the doctrine of industrial double jeopardy.

Mr. Fasano invokes the industrial double jeopardy doctrine as a basis for improper termination.  The industrial double jeopardy doctrine, "a subset of 'industrial due process[,]' is an 'esoteric area of labor relations law' that 'enshrines the idea that an employee should not be penalized twice for the same infraction.'"[42] The doctrine "applies only where a final decision on the merits of a sanction has been made and the sanction or penalty subsequently is increased."[43]  This Court explained that a penalty is not "final" for the purposes of industrial double jeopardy when "employers suspend employees pending investigation of alleged misconduct[.]"

---

[42] *Khan v. Del. State University*, 2016 WL 3575524, at *11 (Del. Super. June 24, 2016) (quoting *Zaya v. Bacardi Corp.*, 524 F.3d 65, 66, 69 (1st Cir. 2008)).
[43] *Khan*, 2016 WL 3575524, at *11.

Mr. Fasano claims that the Termination Notice violated the industrial double jeopardy doctrine because it included the conduct from the Suspension Notice, which was a separate offense and final decision on the merits.[44]  On other hand, DNREC contends that the Suspension Notice was not a final decision.[45]

The Court finds that the Termination Notice is not a violation of industrial double jeopardy.  Consistent with *Khan*, the Suspension Notice does not invoke the doctrine of industrial double jeopardy because the letter *recommended* a three-day suspension without pay pending additional disciplinary action upon further investigation of Mr. Fasano's conduct.  Moreover, the record shows that the Suspension Notice was not meant to be a final decision on the merits, and Mr. Fasano could not have understood it as such.

## B. District Attorney General Victoria Sweeney's representation of the Board on remand did not deprive Mr. Fasano of a fair hearing.

Mr. Fasano argues that he did not receive a fair hearing before the Board because District Attorney General Victoria Sweeney's representation of DNREC on its motion to dismiss and subsequent representation of the Board on remand created an impermissible conflict of interest.[46]  DNREC and the Board argue that this issue is waived as Mr. Fasano "knew or should have known that DAG Sweeney wrote DNREC's motion to dismiss, but he did not object to DAG Sweeney's participation

---

[44] Opening Br. at 15–16.
[45] DNREC Answering Br. at 30.
[46] Opening Br. at 25.

on May 15, 2024, as counsel to" the Board.[47]  In response, Mr. Fasano contends that the issue falls under the exception to the waiver rule as a constitutional issue.[48]

This Court has held that the waiver rule is "not absolute" as "constitutional issues need not be presented to an administrative agency as a prerequisite for their consideration by a reviewing court."[49]  Although Mr. Fasano should have raised this constitutional issue before the Board, the issue is not considered waived here.

Citing a Nebraska Supreme Court case, Mr. Fasano claims that Ms. Sweeney's involvement in the case was a violation of due process because her role as an advocate to DNREC, and subsequent representation of an administrative agency acting in a quasi-judicial capacity, in the same case, is analogous to judicial disqualification for commingling a prosecutorial and adjudicative role in the same controversy.[50]

The Court finds the Delaware Supreme Court's decision in *Blinder, Robinson & Co., Incorporated v. Bruton* instructive here.[51]  In *Blinder*, the Court determined whether the appellant's due process rights were violated because the commissioner of the administrative hearing was "responsible for investigating and prosecuting

[47] DNREC Answering Br. at 26;  MERB's Answering Brief, D.I. 15, at 8 ("MERB Answering Br.").
[48] Reply Br. at 20.
[49] *Down Under, Ltd.*, 576 A.2d at 677 (citing *Califano v. Sanders*, 490 U.S. 99, 97 (1977); *Tenneco Oil Co. v. Department of Energy*, 475 F. Supp. 299, 311 (D. Del. 1979)).
[50] Reply Br. at 20–21 (citing *Uhrich & Brown Ltd. P'Ship v. Middle Republican Nat. Res. Dist.*, 315 Neb. 596, 609–10, 615 (2023));  *see also* Opening Br. at 26.
[51] 552 A.2d 466 (Del. 1989).

violations" of the statute in question while "simultaneously discharging . . . administrative responsibilities."[52] The *Blinder* Court held that commingling prosecutorial and adjudicative roles is not a due process violation unless there is a showing "sufficient to overcome the strong presumption" that adjudicators act honestly and with integrity, "in the absence of specific evidence of bias."[53]

Here, the Court finds that the record does not indicate that Ms. Sweeney's role in the case is sufficient to overcome the strong presumption that the Board acted honestly and with integrity. Even though Ms. Sweeney was undersigned counsel on DNREC's procedural motion to dismiss, there is nothing in the record to indicate that arguing Mr. Fasano's grievance as untimely affected the Board's honesty and integrity when she stepped in to represent the Board on remand almost three years later.

Further, Mr. Fasano's arguments that her alleged bias affected the Board's honesty and integrity is unpersuasive. Mr. Fasano claims that Ms. Sweeney "undoubtedly learned off-the-record information about Mr. Fasano through her involvement as DNREC's counsel that may have impacted her advice, even unconsciously, to the Board."[54] This argument is speculative and not specific evidence of bias. As the Board points out, "the hearing transcript is . . . devoid of

---

[52] *Id.* at 472.
[53] *Id.* at 473 (citing *Withrow v. Larkin*, 421 U.S. 35, 47, 95 (1975)).
[54] Opening Br. at 26–27.

any argument, advice, or . . . comment by Ms. Sweeney demonstrating bias in favor of DNREC" and against Mr. Fasano.[55]  Similarly, Ms. Sweeney's response to Mr. Fasano's counsel about the Board's untimely decision does not show that Ms. Sweeney was biased towards Mr. Fasano.[56]  Accordingly, the Court rejects this claim.[57]

## C. The Board's untimely decision was not prejudicial to Mr. Fasano.

Mr. Fasano argues that he was not afforded a fair hearing because the Board issued its decision late under 29 *Del. C.* § 5949(a).[58]  The Board concedes that the decision was issued late, but contends that it did not violate Mr. Fasano's right to a fair hearing because there is no showing of actual prejudice.[59]  DNREC also argues that the Board's decision was untimely and claims that Mr. Fasano's argument is "speculative."[60]

Under 29 *Del. C.* § 5949(a) the Board must "take final action on an appeal within 90 calendar days of submission to the Board."  Despite the Board's untimely decision, Mr. Fasano has not demonstrated that the delay caused him actual

---

[55] MERB Answering Br. at 10.
[56] *See* Ex. A to Opening Br.
[57] The Court also notes that lawyer discipline for alleged violations of the Delaware Rules of Professional Conduct as cited by Mr. Fasano in his opening brief is reserved for the Office of Disciplinary Counsel and the Delaware Supreme Court. Office of Disciplinary Counsel, Office of Disciplinary Counsel - Supreme Court - Delaware Courts - State of Delaware (last visited Oct. 30, 2022).
[58] Opening Br. at 26–27.
[59] MERB Answering Br. at 11–12.
[60] DNREC Answering Br. at 32.

prejudice.[61]  Mr. Fasano claims that he "was forced to bring an action for writ of mandamus . . . to compel [the Board] to issue a final decision."[62]  In *Jain v. Delaware Board of Nursing*, the Delaware Supreme Court stated that "[t]he type of 'actual prejudice that must be established to challenge the validity of an administrative agency's determination must relate to an individual's due process rights and to his or her ability to obtain a 'fair administrative hearing.'"[63]  Here, Mr. Fasano does not demonstrate that filing a writ of mandamus relates to his due process rights or his ability to obtain a fair administrative hearing.  Consequently, the Court rejects this argument.

### D. The Chairperson's comment during the May 15, 2024 hearing did not deny Mr. Fasano his right to due process.

Finally, Mr. Fasano contends that the Board's Chairperson impermissibly "prejudged the case against Mr. Fasano, and her statements off the record indicated that she considered impertinent factors in ruling against Mr. Fasano."[64]  Specifically, Mr. Fasano claims that it was wrong for the Chairperson to make a comment during the hearing that Ms. Winters' testimony "did [Mr. Fasano] no favors."[65]

---

[61] *Walker v. Bd. Of Examiners of Pyschologists*, 2011 WL 1045634, at *5 (Del. Super. Mar. 22, 2011) (citing *Sandefur v. Unemployment Ins. Appeals Bd.*, 1993 WL 389217, at *5 (Del. Super. Aug. 27, 1993)).

[62] Opening Br. at 27.

[63] 72 A.3d 501, 2013 WL 3788095, at *3 (Del. Super. July 16, 2013) (TABLE) (quoting *Walker*, 2011 WL 1045634, at *5 & nn. 45–46).

[64] Opening Br. at 28.

[65] *Id.* at 28 (internal quotations marks omitted); *see also* R. at 324.

The Court is guided by *Rehoboth Art League, Incorporated v. Board of Adjustment of Town of Henlopen Acres*.[66] There, the Delaware Supreme Court considered whether "the Board failed to act impartially" by prejudging the issues based on comments from Board members that appellant argued "essentially denied [a zoning variance] application before hearing any substantive evidence."[67] The Court concluded that "Board members are entitled to have a view of the evidence and express that view *during a hearing* held to deliberate on the issue."[68]

Similarly, Mr. Fasano is arguing that the Board's Chairperson prejudged the issue based on a comment made during the hearing on the merits. The Chairperson was expressing their view on Ms. Winters' testimony and her credibility during the hearing, which the Chairperson was entitled to do. Neither the record nor Mr. Fasano's argument indicate that the comment demonstrated "a preconceived bias regarding the merits of [the just cause determination for Mr. Fasano's termination] such as would deny due process."[69] Thus, the Court finds the Chairperson's comment did not deny Mr. Fasano a fair hearing such that reversal is warranted.

In sum, Mr. Fasano fails to demonstrate that the hearing did not afford him his specified due process rights under Merit Rule 12.1.

---

[66] 991 A.2d 1163, 1167 (Del. 2010).
[67] *Id.* at 1168
[68] *Id.* (citing *Lynch v. City of Rehoboth Beach*, 2005 WL 1074341, at *5 (Del. Ch. Apr. 21, 2005)) (emphasis added).
[69] *Rehoboth Art League, Inc.*, 991 A.2d at 1168.

## CONCLUSION

For the foregoing reasons, the Merit Employee Relations Board's decision upholding Mr. Fasano's termination is **AFFIRMED**.

**IT IS SO ORDERED.**

*/s/ Calvin Scott*
Judge Calvin L. Scott, Jr.